IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JUAN PABLO GUTIERREZ, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL NO. |
| | : | 1:07-cr-0051-JEC-RGV-1 |
| UNITED STATES OF AMERICA, | : | |
|     Respondent. | : | CIVIL ACTION NO. |
| | : | 1:10-cv-2748-JEC-RGV |

**ORDER AND OPINION**

This matter is before the Court on the Magistrate Judge's Final Report and Recommendation ("R&R") [340] recommending that defendant Juan Pablo Gutierrez's 28 U.S.C. § 2255 motion to vacate sentence [335] be denied. Defendant has filed objections [341-42]. The Court reviews de novo the portions of the R&R to which defendant has objected and reviews for plain error the remaining portions. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3); *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983)(per curiam).

**I.    BACKGROUND**

Defendant Gutierrez pled guilty, pursuant to a negotiated plea agreement, to a conspiracy to possess with the intent to distribute at least one hundred kilograms of marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(B)(vii) and 846. (Plea Agreement [259].) The plea agreement contained a sentence appeal waiver provision. (*Id*. at ¶ 7.) During the plea hearing, defendant confirmed that he understood the rights he was giving up by pleading guilty, the nature

of the charge to which he was pleading, his exposure to a possible maximum sentence of forty years of imprisonment and to a five-year mandatory minimum, the Court's obligation to calculate a sentencing guideline range and its ability to impose a sentence above or below that range, and the terms and consequences of the sentence appeal waiver. (Plea Hr'g Tr. [301] at 7-9, 12-17, 23-32.) Defendant also admitted his involvement in the drug conspiracy and acknowledged that no one had threatened or forced him to plead guilty, that he was pleading freely and voluntarily, and that no one had promised him anything beyond what was indicated in the plea agreement. (*Id*. at 17-19.) The Court accepted defendant's plea. (*Id*. at 33.)

At the April 27, 2009 sentencing hearing, the Government confirmed that Gutierrez was in the country illegally and, thus, subject to deportation. (Sent. Hr'g Tr. [325] at 23.) The Court sustained defendant's objection to a firearm enhancement, but overruled his objection to the calculation of the amount of drugs and to a leadership enhancement. The Court found that defendant's guideline range was 168 to 210 months of imprisonment and sentenced him to 168 months of imprisonment, with credit for time served since his February 14, 2007 arrest. (*Id*. at 30, 32-33; Am. J. and Commitment [316].) Further, the Court informed the defendant that, at the end of his sentence, he would be turned over to ICE officials for deportation proceedings. (Sent. Hr'g Tr. [325] at 33.)

Notwithstanding his appeal waiver, Gutierrez directed his counsel to file an appeal of his conviction and sentence. Defense counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and the United States Court of Appeals for the Eleventh Circuit affirmed Gutierrez's conviction and sentence on January 11, 2010. (J. and Commitment [334].)

In the present motion to vacate his sentence, defendant argues that counsel fraudulently induced him to enter a plea, despite his protestation of innocence, and was ineffective for failing to argue at sentencing that he was entitled to a downward departure under U.S.S.G. §§ 5C1.2 and 5K2.0, for failing to inform him that his plea could result in his deportation, for failing effectively to dispute the validity of the arrest warrant or the basis of a search executed in this case, and for failing to challenge the denial of the motions to suppress on appeal. (Def.'s Mot. to Vacate [335] at ¶ 12; Aff. at 4, 11-50.) The Government responded that defendant's claims were barred by his appeal waiver. (Gov't's Resp. [337] at 3-6.)

The magistrate judge concluded that defendant's voluntary guilty plea waived all claims alleging nonjurisdictional defects, including the denial of his motion to suppress evidence. (R&R [340] at 8-9.) The magistrate judge further determined that Gutierrez's challenge to his sentence was barred by his sentence appeal waiver. (*Id.* at 9-10.) As to defendant's complaint that his attorney had not advised

3

him that he could be deported if convicted, the magistrate judge concluded that defendant had knowingly and voluntarily pled guilty and that he could not establish prejudice based on counsel's alleged failure to advise him of the immigration consequences of his guilty plea as he was, and is, an illegal alien, who was always subject to deportation even before his guilty plea. (*Id.* at 7-8.)

## II. DISCUSSION

### A. Issues Barred By Appeal Waiver

Defendant has objected that his claims challenging the validity of his guilty plea are not barred by his sentence appeal waiver. (Def.'s Obj. [341] at 2-8.) Indeed, the magistrate judge acknowledged that only defendant's claim of ineffective assistance of counsel during sentencing was barred by his appeal waiver.

As to those matters not barred by the appeal waiver, the Court concurs with the magistrate judge as to his reasoning and conclusion that none of these claims are sufficient to warrant granting defendant's motion to vacate conviction and sentence. Only one of these claims merits further discussion: the claim regarding counsel's alleged failure to tell defendant that he would likely be deported as a result of his drug trafficking conviction.

### B. Defendant's Claim Regarding The Deportation Issue

The magistrate judge framed defendant's deportation claim as a claim that his attorney had failed to warn him that he could be

4

deported as a result of his drug trafficking conviction, which omission purportedly constituted ineffective assistance of counsel pursuant to *Padilla v. Kentucky,* 130 S. Ct. 1473 (2010). This Court will likewise address the claim as so framed. As explained below, however, it is worth noting that the above characterization does not really reflect the main thrust of defendant's argument on this issue in his initial motion to vacate sentence. Rather, in his motion, defendant focused almost exclusively on his attorney's failure to request a downward departure as a result of defendant's status as a deportable alien, <u>not</u> on any failure to advise the defendant that his conviction could have deportation consequences.

Specifically, defendant noted that, as a deportable alien, the length of his imprisonment would probably be effectively longer than an American citizens's sentence, because defendant will not be allowed to serve the last 10% of his sentence in a halfway house and because he will not receive the one-year reduction in sentence that American citizens typically get for participating in a drug/alcohol treatment program.[1] Moreover, defendant further indicated that, as

---

[1] The Court assumes that defendant meant that, because of space limitations in the intensive drug treatment program, deportable aliens are not typically admitted to those programs, meaning that they are necessarily unable to get the one-year reduction in sentence available to most participants who successfully complete the program.

Of course, regardless of his immigration status, defendant would not have been placed in any type of drug treatment program as he

5

a deportable alien, the conditions of his confinement would also be harsher, as he will not be eligible for a minimum security prison and therefore might have to serve his time with offenders who are serving sentences for crimes of violence, sexual offenses, and the like.[2] Defendant complains that his attorney's failure to ask for a downward departure under these circumstances revealed the attorney to have an inadequate knowledge of how the Guidelines work and to have been ineffective in not asking for a departure based on the above facts.[3] (Def.'s Mot. to Vacate [335] at 24-28.)

It is true that, in the conclusion portion of his motion to vacate, defendant did list his claims and did describe the present issue as one in which defense counsel had "failed to inform [defendant] that his guilty plea could result in deportation." (*Id.*

---

advised the probation officer that he had never used drugs or alcohol. (PSR at 33, § 118.)

[2] The Court questions the accuracy of defendant's notion that the Bureau of Prisons would have designated him to a minimum security facility, but for his status as a deportable alien. Defendant was convicted of being a leader of a large-scale drug trafficking operation. Whether he was a citizen, resident alien, or an illegal alien, that conduct was not likely going to gain defendant admittance to a minimum security prison.

[3] Defense counsel was likely well aware that asking for a downward departure based on the above factors would have been futile before the undersigned. As best the Court can recall, it has never granted a downward departure or variance based on the fact that a defendant who is an illegal alien will not get to stay in a halfway house prior to his release or that the defendant may have to serve time with unsavory characters.

6

at 43.) But, as will be discussed below, it is significant that defendant's real argument was not that he was unaware that he would likely be deported at the conclusion of his sentence, but rather that his attorney performed inadequately by not emphasizing the negative impact on the conditions of his confinement that his deportation status could pose, in order to persuade the Court to reduce his sentence as a result of that fact. Implicit in this argument is defendant's own awareness that he was deportable, as he faults his attorney for not attempting to gain the sympathy of the Court by emphasizing that fact.

Following issuance of the magistrate judge's R&R, the defendant filed Objections [341-42]. In this pleading, he continued to emphasize his unhappiness with his attorney's failure to advocate persuasively for a lower Guidelines' calculation, generally, and with the latter's filing of an *Anders* brief. As his final issue, defendant briefly referenced the *Padilla* claim, and stated that his attorney's failure to advise him of the risk of deportation warranted § 2255 relief. Again, however, defendant made no claim that he was independently unaware of the strong risk of deportation as a result of his drug trafficking conviction.

### C. *Padilla* **Is Not Retroactive**

Defendant's *Padilla* claim has legs only if *Padilla* can be applied retroactively to claims made in a petition for collateral

7

relief, which is what defendant's present § 2255 petition is. The Court believes that *Padilla* should not be applied retroactively, for the reasons set out by a colleague on this Court. *See United States v. Chapa*, 800 F. Supp. 2d 1216 (N.D. Ga. July 12, 2011)(Baverman, Mag. J.). As noted in *Chapa*, the majority of circuit courts of appeals have concluded that *Padilla* should not be applied retroactively.

The Eleventh Circuit has not yet ruled.[4] Certiorari was granted on this very question by the Supreme Court this term in *Chaidez v. United States*, 655 F.3d 684 (7th Cir. 2011), *cert. granted*, 132 S. Ct. 2101 (2012). In October, 2012, the Supreme Court heard oral argument. As it is possible that the Supreme Court will view the matter differently and decide that *Padilla* should be applied retroactively to a claim made for collateral relief, the Court will assume retroactivity and analyze defendant's claim on its merits.

---

[4] In *Figuereo-Sanchez v. United States*, 678 F.3d 1203, 1208-09 (11th Cir. 2012), the Eleventh Circuit merely assumed, without deciding, that *Padilla* set out a new rule, as the defendant had so conceded. Whenever the Supreme Court announces a new rule of criminal procedure, that rule cannot be applied retroactively unless one of two exceptions apply. The *Figuereo* court concluded that neither of those exceptions applied in the case before it.

**D. Even If Retroactive, Defendant Has Not Alleged Prejudice As A Result Of His Attorney's Alleged Failure To Advise That His Drug Trafficking Conviction Subjected Him To Deportation**

Assuming that *Padilla* must be applied retroactively and assuming that defendant's counsel did not mention to defendant the likelihood of deportation following a conviction on a guilty plea, then the Court would be required to conclude that the attorney rendered deficient assistance. Yet, under *Strickland v. Washington,* 466 U.S. 668 (1984), deficient performance by an attorney does not warrant relief for a defendant unless the latter can also show prejudice as a result of his attorney's error. A defendant can satisfy the prejudice requirement in a guilty plea context only when he establishes by a reasonable probability that, but for counsel's errors, he would not have pled guilty, but would instead have gone to trial. *Jackson v. United States,* 463 Fed. App'x 833, 834 (11th Cir. 2012)(citing *Hill v. Lockhart*, 474 U.S. 52 (1985)).

Indeed, the Supreme Court did not grant defendant Padilla relief, even though it found defense counsel to have erred by affirmatively misadvising Padilla that he would not be deported by virtue of his guilty plea to a drug charge. Instead, it remanded the case for a determination whether defendant Padilla had suffered any prejudice as a result of counsel's incorrect advice, noting that Padilla would be required to "convince the court [below] that a

9

decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 130 S. Ct. at 1485.

So, similarly, the question in this case is whether defendant Gutierrez has alleged prejudice such that one could reasonably conclude that, had his lawyer told him he would probably be deported after serving his sentence, the defendant would have decided against pleading guilty and instead would have insisted on going to trial. The Court concludes that defendant has not alleged any facts from which one could infer prejudice.

First, and obviously, defendant could have been harmed by his attorney's alleged failure to mention the likelihood of deportation only if defendant were independently unaware of that prospect. In other words, if the defendant already knew prior to his plea that he would probably be deported after completing his prison sentence, his attorney's failure to reiterate that point could not have prejudiced him. To his credit, defendant nowhere alleges such ignorance on his part.

Indeed, it is inconceivable that defendant was unaware of the likelihood of deportation. On that point, defendant's situation differs greatly from that of Padilla. Prior to his guilty plea, Padilla was legally present in the United States, having been a legal permanent resident for more than 40 years and also having served honorably with American forces in the Vietnam War. *Padilla*, 130 S.

10

Ct. at 1477. Given that status, it is understandable that Padilla would have been uncertain, and greatly worried, whether he would be deported upon conviction of the marijuana transportation charge to which he pled. Given that uncertainty, his attorney's answer to his specific inquiry on that matter--to the effect that Padilla "did not have to worry about immigration status since he had been in the country so long"--was not only incorrect advice, but was devastatingly so.[5] *Id.* at 1478.

Here, defendant Gutierrez could have been under no misimpression that he was not deportable. He does not dispute that he entered the country illegally a few years before the investigation of the drug conspiracy began,[6] and that his presence here has always been in violation of the law. Aware that he was deportable even had he remained a law-abiding person, defendant necessarily had to know that the chances of defeating any future effort to deport him would be

---

[5] On remand for a determination of prejudice, the Kentucky Court of Appeals noted that Padilla had left Honduras as a teen-ager and that, but for a two week visit, he had never returned. Padilla testified that deportation would be like "'putting a gun' to his head," and that had he known it was a certainty, he would have never pled guilty. Upon a review of all the facts, the Kentucky appellate court found that prejudice arose from defense counsel's incorrect advice. *Padilla v. Commonwealth*, 381 S.W. 3d 322, 330 (Ky. Ct. App. 2012).

[6] According to the PSR, the FBI first began investigating this particular drug ring, whose base was in Mexico and McAllen, Texas, in 2006. (PSR at 16, ¶ 58). According to defendant, he lived in Mexico prior to 2001. (*Id.* at 34, ¶ 124.)

11

infinitesimally small once he was convicted of being involved in a drug trafficking conspiracy for which he had assumed a leadership role. Moreover, unlike most of the hundreds of illegal aliens from Mexico who have appeared before this Court, defendant Gutierrez was fairly well-educated, having finished high school and having spent one year in college in Mexico where he studied law. (PSR at 33, ¶ 119 and Plea Hr'g Tr. [301] at 5.) Finally, as wiretaps and investigation revealed, defendant's life appeared to revolve largely around his drug trading activities with other illegal immigrants from Mexico.[7] (*See generally* PSR at 7-14, §§ 34-55.) It is inconceivable that, among this circle of acquaintances, defendant would not have been well aware that illegal immigrants who deal drugs get deported.[8]

---

[7] In explaining to the interviewing probation officer, how he got into the drug business, defendant noted that he had previously been operating an automobile repair shop with a clientele that apparently was largely of Mexican background. He indicated that "the Mexican culture is dominated by discussion regarding narcotics," and that his customers discussed narcotics trafficking with him. He then began supporting himself by selling narcotics. (PSR at 19, ¶ 72)

[8] As noted, certainly by the time of sentencing, the defendant was aware that he could be deported. The prosecutor so stated during the sentencing hearing. *Supra* at 2. Likewise, during the sentencing hearing, the Court indicated to this defendant and appropriate co-defendants that they would be turned over to ICE for deportation proceedings at the end of their sentence. (Sent. Hr'g Tr. [325] at 33; that part of the sentencing proceeding involving co-defendants who were sentenced at the same time as the defendant has not been transcribed.) Defendant articulated no surprise at this disclosure, then or at any time since.

12

Beyond the fact that defendant has not alleged that he was unaware of the likelihood of deportation upon his conviction of this offense, he likewise has not alleged that he would have chosen not to plead guilty had he been formally informed of this fact by his lawyer. A noted *supra,* a defendant alleging a *Padilla* error can satisfy the prejudice requirement in a guilty plea context only when he establishes by a reasonable probability that he would not have pled guilty had he know about the deportation ramifications of a plea. Stated another way, such a defendant would have to convince the reviewing court that it would have been rational for him to change his decision to plead guilty had he been formally advised of these immigration consequences. *Padilla*, 130 S. Ct. at 1485.

Here, defendant has made no argument that he would have made a different decision had his lawyer explicitly discussed with him the immigration ramifications of a conviction. Further, on these facts, the Court cannot conclude that it would have been "rational" for him to refuse to plead guilty merely as a result of the fairly obvious prospect of future deportation. That is, defendant here was in a very different situation than was Padilla. The latter had enjoyed legal resident alien status, with all the benefits this conferred, for over four decades. In short, Padilla had deep roots in this country and lived like an American citizen. Deportation under these circumstances would understandably be a factor that would figure into

13

his plea calculus as much, if not more, than the amount of imprisonment time he faced.

Defendant Gutierrez, on the other hand, has never had legal status and, as suggested in the PSR, has necessarily had to live somewhat in the shadows[9] during the period of time he was in this country prior to his arrest. Defendant will probably[10] be deported upon the expiration of his prison term, but, unlike for Padilla, this exercise will likely create only a temporary inconvenience for defendant, should he ever seek to return. That is, having sentenced

---

[9] Defendant has used at least six aliases according to the PSR. (*See* PSR Cover Sheet at 3.); He has no legitimate social security number or driver's license, but, in searching his apartment pursuant to a warrant, DEA agents found a driver's license under an alias and a Social Security card under a different alias. (PSR at 15, ¶ 56.) In his interview with the probation officer, defendant indicated that he has no assets or liabilities. (PSR at 34, ¶ 125.)(While almost $37,000 in currency was found during the search of his apartment, those monies have been forfeited.) (*Id.* at 15, ¶ 56.)

[10] The premise of any contention of prejudice to defendant is the likelihood that he will be deported upon completion of his federal sentence. Yet, this prospect is now more speculative than it might have been when defendant filed his § 2255 motion. Specifically, there is now much discussion in the public arena suggesting the possibility of effectively offering amnesty from deportation, if not full citizenship, to persons who are illegally in this country. Accordingly, it is not altogether certain that any illegal immigrants, even those with felony convictions, will necessarily be deported in the future. Moreover, even if the law continues to provide for the deportation of illegal aliens with felony drug trafficking convictions, the extent to which such people will actually be deported in the future will depend on whether the Executive Branch exercises its discretion to so implement those laws. Accordingly, it is not at all certain that defendant Gutierrez will ever be deported.

14

hundreds of illegal aliens who have returned to this country--many of them multiple times--since deportation following their conviction of a crime, it is obvious to the undersigned that reentry by deported aliens is not a terribly daunting feat. Although there can certainly be exceptions, deportation of an illegal alien who has roots in his community that are as shallow and non-permanent as are the defendant's is typically not a permanently life-altering experience for that person, given the ease with which reentry can be accomplished and new identities can be obtained.

Accordingly, the Court concludes that even assuming that defendant was unaware that he would likely be deported after serving his sentence, defendant would still have pled guilty had he learned this fact, as deportation for him would not have been a significant enough event to undermine the other good reasons he had for pleading guilty. Those other reasons include what appeared to be overwhelming evidence by the Government, the decision of all his co-defendants to plead guilty, and the prospect of receiving favorable Guidelines' adjustments as a result of his plea.[11]

---

[11] By pleading guilty, defendant received the standard 3-level reduction for acceptance of responsibility. The Government recommended, as part of its plea agreement, a low-end-of the range sentence, which the Court granted. Further, the Court sustained defendant's objection to a firearms enhancement. While the Court overruled two of defendant's Guidelines objections pertaining to the quantity of drugs and his leadership role, an experienced lawyer would have communicated to his client that the likelihood of

15

In summary, the Court concludes that defendant has failed to allege that he was unaware of the likely deportation consequence of his conviction or that, being aware, he would have decided not to plead guilty. Even had defendant made these allegations, the Court would have found them to be improbable for the reasons set out above.

### III. CONCLUSION

For the above reasons, the Court **ADOPTS** the Magistrate Judge's Final Report and Recommendation [340], as supplemented by this Order and **DENIES** defendant Gutierrez's 28 U.S.C. § 2255 motion to vacate sentence [335], and **DENIES AS MOOT** any other pending motions by the defendant.

The question whether to issue a certificate of appealability is a trickier question than usual because of the uncertainty about the retroactivity question now before the Supreme Court. The Court speculates that the Supreme Court will not make *Padilla* retroactive, but obviously cannot know for sure. If *Padilla* is not deemed to apply retroactively, then any appeal by defendant would be futile.

As the Supreme Court might decide to apply *Padilla* retroactively, however, and has the Eleventh Circuit has not yet ruled on this question, the Court concludes that an appeal by defendant of this Court's determination of the merits of his claim

---

defeating these enhancements would not have improved with a full vetting of the facts at a trial.

16

cannot yet be said to be frivolous. Accordingly, the Court **GRANTS** a certificate of appealability, finding that the defendant has made a substantial showing of the denial of a constitutional right--to wit, the right to effective assistance of counsel. *See* 28 U.S.C. § 2253(c)(2). Specifically, defendant shall be allowed to appeal the Court's ruling that he has failed to demonstrate prejudice as to his alleged *Padilla* violation claim.

The Clerk is **DIRECTED** to close this action.

**IT IS SO ORDERED** this 15th day of FEBRUARY, 2013.

/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)